# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| HAZEL WOOD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:13-CV-01062-DGK-SSA |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER REMANDING CASE TO COMMISSIONER FOR FURTHER PROCEEDINGS

This action seeks judicial review of the Commissioner of Social Security's ("the Commissioner") decision denying Plaintiff Hazel Wood's applications for Social Security benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401–434, and Supplemental Security Income under Title XVI of the Act, 42 U.S.C. §§ 1381–1383f. The Administrative Law Judge ("ALJ") found Plaintiff had several severe impairments, including obesity, left ankle surgery, degenerative disc disease, bilateral carpal tunnel syndrome, major depressive disorder, post-traumatic stress disorder, bipolar disorder with psychotic features, and personality disorder NOS, but retained the residual functional capacity ("RFC") to perform light work with several restrictions.

After carefully reviewing the record and the parties' arguments, the Court finds that although most of Plaintiff's arguments are without merit, the ALJ erred in failing to order a consultative examination to obtain a psychiatric review technique. Accordingly, pursuant to *Cuthrell v. Astrue*, the Court REMANDS this case to the Commissioner for further proceedings consistent with this opinion. 702 F.3d 114 (8th Cir. 2013).

## Procedural and Factual Background

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

Plaintiff filed her applications on June 30, 2010, alleging a disability onset date of April 24, 2007. The Commissioner denied the applications at the initial claim level, and Plaintiff appealed the denial to an ALJ. The ALJ held a hearing, and on May 25, 2012, issued a decision finding Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review on August 28, 2013, leaving the ALJ's decision as the Commissioner's final decision. Plaintiff has exhausted all administrative remedies and judicial review is now appropriate under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

## Standard of Review

The Commissioner follows a five-step sequential evaluation process[1] to determine whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A).

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Buckner v. Astrue,* 646 F.3d 549, 556 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind

---

[1] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) his impairments, alone or combined, are medically severe; (3) his severe impairments meet or medically equal a listed impairment; (4) his residual functional capacity precludes his past relevant work; and (5) his residual functional capacity permits an adjustment to any other work. The evaluation process ends if a determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); *see* 20 C.F.R. §§ 404.1520(a)–(g); 416.920(a)–(g). Through Step Four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches Step Five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *McKinney v. Apfel,* 228 F.3d 860, 863 (8th Cir. 2000). The court must "defer heavily" to the Commissioner's findings and conclusions. *Hurd v. Astrue,* 621 F.3d 734, 738 (8th Cir. 2010). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice, and a decision is not outside this zone simply because the court might have decided the case differently were it the initial finder of fact. *Buckner,* 646 F.3d at 556.

## Discussion

Plaintiff argues the ALJ erred at step four in the sequential evaluation process because he: (1) failed to give controlling weight to her treating physicians' opinions; (2) failed to consider the combined effects of impairments; (3) erred in analyzing her credibility; (4) erred in finding she could perform a limited range of light work by making this finding without first ordering a psychiatric review technique. Although the first three arguments are without merit, the fourth compels remand.

**A.     The ALJ did not err in analyzing the treating physicians' opinions.**

Plaintiff contends the ALJ erred by giving little weight to the opinion of her primary treating physician, Dr. Niko Van Zanten, M.D., ("Dr. Van Zanten") and her primary treating psychologist, Dr. Richard Adams, Psy.D ("Dr. Adams"). Where, as here, the record contains differing medical opinions, it is the ALJ's responsibility to resolve conflicts among them. *Finch v. Astrue*, 547 F.3d 933, 936 (8th Cir. 2008). The ALJ must assign controlling weight to a treating physician's opinion if that opinion is well-supported and consistent with other evidence in the record. 20 C.F.R § 404.1527(c)(2). An ALJ cannot, however, give controlling weight to the doctor's opinion if it is not supported by medically acceptable laboratory and diagnostic techniques, or if the opinion is inconsistent with the other substantial record evidence. *Id.*;

3

*Halverson v. Astrue*, 600 F.3d 922, 929-30 (8th Cir. 2010). "[A]n ALJ may credit other medical evaluations over that of the treating physician when such other assessments are supported by better or more thorough medical evidence." *Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011).

If an ALJ discounts a treating physician's opinion, he must give "good reasons" for doing so. *Dolph v. Barnhart*, 308 F.3d 876, 878-79 (8th Cir. 2002). Once the ALJ has decided how much weight to give a medical opinion, the court's role is limited to reviewing whether substantial evidence supports this determination, not deciding whether the evidence supports the plaintiff's view of the evidence. *Brown v. Astrue*, 611 F.3d 941, 951 (8th Cir. 2010).

The ALJ did not err in discounting either doctors' opinion because he gave valid reasons for doing so. In rejecting Dr. Van Zanten's medical source statement ("MSS") which suggested limiting Plaintiff "to lifting five pounds with no climbing, balancing, stooping, kneeling, crouching, crawling or reaching," the ALJ noted that these limitations were not supported by objective testing in the record or the doctor's treatment notes. R. at 22. This is correct. The ALJ discussed the objective medical testing in the record, R. at 18-23, including magnetic resonance imaging of the spine, R. at 295-301, an orthopedic evaluation, R. at 304-05, and nerve conduction testing, R. at 290, all of which were essentially normal and support the ALJ's conclusion. The ALJ also rightly noted that Plaintiff's own reports indicated she was capable of more than Dr. Van Zanten's MSS suggested. For example, in November 2009, Plaintiff told a nurse practitioner in the doctor's office that she injured her back lifting a recliner into the back of a pick-up truck. R. at 331. And in April of 2010, Plaintiff reported working ten hour shifts in a factory assembling parts. R. at 326.

The ALJ also did not err in rejecting Dr. Adams' ultimate conclusion, namely that Plaintiff could not perform any full-time work. After carefully considering all the evidence, the

4

ALJ agreed that Plaintiff should be limited to work involving simple, routine, repetitive tasks; she should not work in a fast-paced environment or as part of a team; she should have to make simple decisions only; and she should interact with others only occasionally. R. at 17-22. The ALJ rightly observed that Dr. Adams had limited contact with the Plaintiff since the summer of 2011, at which time she was observed to be doing well. R. at 22. The ALJ also did not err in finding Plaintiff could do more than she and Dr. Adams suggested; the record shows she had significant work activity after her alleged onset date, working at various times as a bartender, camp cook, and on an assembly line. R. at 242, 343, 420. Although she never worked full-time during this period, she did work fourteen hour shifts two days a week. R. at 304.

Accordingly, the ALJ did not err in failing to give controlling weight to these physicians' opinions.

**B.     The ALJ considered the combined effects of her impairments.**

Similarly, the Court finds no merit to Plaintiff's claim that the ALJ failed to consider her obesity in combination with her other impairments. The ALJ's decision shows he was well-aware of this health condition. He asked questions about her weight during the hearing, and he noted in his decision that she has weighed over 300 pounds for the past 30 years, evidencing that he paid close attention to her obesity while combing through her medical records. R. at 19, 40. The ALJ made these observations while discussing her other physical impairments and functional limitations, R. at 19-20, so he clearly considered the combined effects of these impairments. In fact, he specifically discussed her obesity in combination with the degenerative changes in her back and ankle in finding that she was limited to a reduced range of light work. R. at 21. Hence, there is no merit to this claim.

**C.     The ALJ properly assessed Plaintiff's credibility.**

Next, the Court turns to Plaintiff's argument that the ALJ erred in discounting her credibility. When the ALJ discounts a claimant's credibility, he is required to explain why he did not fully credit the claimant's complaints. *Lowe v. Apfel*, 226 F.3d 969, 971 (8th Cir. 2000). In analyzing a claimant's subjective complaints of pain, the ALJ considers the entire record, including medical records; statements from the claimant and third parties; the claimant's daily activities; the duration, frequency and intensity of pain; the dosage, effectiveness, and side effects of medication; precipitating and aggravating factors; and functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). Credibility questions are "primarily for the ALJ to decide, not the courts." *Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003). "If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, the Court should defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 713 (8th Cir. 2003).

Here the ALJ articulated several valid reasons for discounting Plaintiff's claims. First, as discussed above, the ALJ noted that the objective medical evidence did not support her claim that she was unable to work. R. at 17-23. This lack of evidence supplied a valid basis to discount Plaintiff's credibility. *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding a lack of objective medical evidence is a proper factor to consider in assessing a claimant's credibility).

Second, the record indicates Plaintiff's pain and mental impairments were relatively well-controlled with medication and conservative treatment. R. at 22, 49, 211. In a questionnaire completed in July of 2010, Plaintiff listed ibuprofen as the only medication used to alleviate her pain. She also testified at the hearing that her doctors never suggested surgery for her back. R. at 45. These facts weigh against her credibility. *Moore v. Astrue*, 572 F.3d 520, 524-25 (8th Cir.

6

2009) (holding the ALJ properly considered Plaintiff's conservative treatment in discounting her claim of disabling pain); *Pepper ex rel. Gardner v. Barnhart*, 342 F.3d 853, 855 (8th Cir. 2003) ("Impairments that are controllable or amenable to treatment do not support a finding of total disability.").

Third, the ALJ identified several inconsistencies in Plaintiff's testimony. R. at 21-22. Among these, she denied using alcohol or drugs to the doctor who performed her ankle surgery in August 2011, but admitted the month before that she had been "drinking" when she was involved in the altercation that led to the ankle injury and surgery. R. at 21-22, 451, 490. At her hearing, she testified she had been diagnosed as an alcoholic and hospitalized for five days to "detox;" that her drinking had interfered with her ability to work and cost her a job; and that her drinking caused her lots of health problems; but she intimated her drinking was not really a problem now because she only drank a six-pack of beer a week. R. at 53-57. This testimony is at least somewhat inconsistent, inconsistencies which detract from her credibility. *See Paschal v. Astrue*, 372 F. App'x 687, 688 (8th Cir. 2010).

Fourth, her activities of daily living are inconsistent with her disability claim. At various times during the relevant period Plaintiff reported working part-time in fairly demanding jobs (two days a week standing for fourteen hours; ten-hour shifts in a factory assembling electric parts, etc.). R. at 242, 304, 343, 420. During this time, her daily activities also included taking care of her two children, cooking, dusting, doing dishes, doing laundry, watching TV, working on puzzles, and walking for exercise. R. at 18-19, 39, 57, 64, 202-205. Such varied daily activities are inconsistent with her assertion of disability and reflect negatively upon her credibility. *See Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001).

Granted some evidence in the record weighs in favor of Plaintiff's credibility, for example, her fairly good work history. But because substantial evidence in the record supports the ALJ's credibility determination, the Court must uphold it. *Buckner*, 646 F.3d at 556.

**D.  The ALJ erred at step four by not ordering a consultative examination to obtain a psychiatric review technique ("PRT") to use in formulating her RFC.**

Finally, Plaintiff argues the ALJ erred at step four by not ordering a consultative psychiatric review technique ("PRT") or mental residual functional capacity assessment to use in formulating her mental RFC. "When mental impairments are present, the PRT is mandatory," and the ALJ's failure to order one is reversible error. *Cuthrell v. Astrue*, 702 F.3d 1114, 1117-18 (8th Cir. 2013). Furthermore, an ALJ's finding that the claimant was not credible does not make this error harmless and eliminate the need to order a PRT. *Id.* at 1118. Here, the ALJ found that Plaintiff suffered from multiple severe impairments, namely "substance-induced mood disorder, major depressive disorder, post-traumatic stress disorder, bipolar disorder with psychotic features, and personality disorder NOS." R. at 16. However, he did not order a PRT, nor is there the functional equivalent of one in the record. Consequently, the Court must remand this case to the Commissioner for further proceedings.

## Conclusion

For the reasons discussed above, the Court REMANDS this case to the Commissioner for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

Date:      February 3, 2015                   /s/ Greg Kays
                                              GREG KAYS, CHIEF JUDGE
                                              UNITED STATES DISTRICT COURT